JOHN SWENARTON AND JOHN W. HUTTON, APPELLANTS, v. MARY HANCOCK, CHARLES M. CARPENTER AND OTHERS, RESPONDENTS.

*Power of the Supreme Court to direct money to be paid to an executor, to defray the expenses of an appeal from a decree admitting the will to probate.*

Where a contest has arisen as to the validity of a will and an appeal has been taken from a decree of the surrogate, admitting the will to probate, but rejecting the codicils thereto, pending which the funds of the estate have, by the consent of the parties, been deposited with him, the Supreme Court

has no power to make an order directing the surrogate to pay over to the executors or their counsel a specified sum of money to be used and expended by them, in the prosecution of the suits relating to the estate.

APPEAL from an order made at Special Term, directing the Surrogate of Rockland county to pay to the executors of John Hancock, deceased, the sum of $3,000, to be used to prosecute suits relating to the estate.

The petition of James M. Allen and A. Stewart Walsh, two of the executors, upon which the order was granted stated, among other things : "That on the twelfth day of September, 1874, the said John Hancock died, at the Town of Clarkstown, leaving a last will, bearing date the second day of January, 1874, which will has been duly admitted to probate by the Surrogate of the county of Rockland. Said Hancock left an estate of over one hundred and thirty thousand dollars, consisting of personal property, composed of cash, bonds and mortgages, and dividend-paying stocks. That subsequent to the making of said will, in January, 1874, it was alleged that certain codicils were made to said will, materially changing the disposition of his property.

"That your petitioners were named as executors and legatees in said will, and as such executors deemed it their duty to contest the validity of such codicils, and did, in conjunction with others affected by the same, contest such codicils, on the ground of fraud and undue influence; whereupon the persons alleged to have fraudulently procured the making of the codicils and interested in sustaining the same commenced litigation, and protracted the same from the Fall of 1874 until the Fall of 1879. . . . . .

"That letters testamentary, under chapter 603 of the Laws of 1871, have been duly issued to your petitioners by the Surrogate of the county of Rockland, to which we beg leave to refer, and make a part of this petition. That your petitioners are advised and believe that during the said times or shortly after the making of the last alleged·codicils, and while the mind of John Hancock, the decedent, was being operated upon by the frauds and undue influence which the said Surrogate has deemed and decreed to be sufficient to invalidate said codicils, the said decedent was induced by fraud and circumvention to deliver over into the hands of the persons

having him in charge over $40,000 of personal property, which property the then custodians now claim to be gifts, which alleged gifts your petitioners are advised, are invalid, and the property claimed thereunder actually and in good faith belongs to the estate of the decedent.

"That while said contest was going on, and before letters testamentary were issued to your petitioners, some of the heirs at law and next of kin of the decedent commenced an action in the Supreme Court to set aside such alleged gifts, and to recover said property into the estate for final distribution under said will, and have sought in their complaint to have the executors of the estate named in the will substituted for said next of kin as plaintiffs therein, as soon as letters should issue to such executors. That since the issuing of said letters, they are now taking steps to perfect such substitution. That while such contest respecting such gifts was pending, the funds and property belonging to the estate were paid over to the Surrogate, and retained in his custody until the final termination of this controversy, subject to such claims for expenses and just allowances as the courts might decree. That there are now in the hands of said Surrogate, belonging to the said estate, as your petitioners are informed and believe, the sum of more than $75,000. That an appeal has been taken from the decree of the Surrogate by John Swenarton and John W. Hutton, who claim to be legatees under the aforesaid invalid codicils.

"That your petitioners have appeared and answered the petition of appeal by their aforesaid counsel. That to pay the expense of protecting this estate and employing counsel therefor, is a burden which your petitioners cannot well afford to pay from their individual means. They are advised and believe that such expenses are a proper charge upon the estate.

"Therefore your petitioners pray this honorable court that an order may be entered directing a moderate and temporary allowance from the funds of the estate now in the hands of the Surrogate, to be drawn therefrom by your petitioners with which to pay expenses and counsel fees, leaving the question of final and full allowances to be adjusted and fixed upon the final determination of the appeal herein."

The order directed the Surrogate to "pay out of any funds in his

hands belonging to the estate of the said decedent, the sum of three thousand dollars to Alexander Stewart Walsh, James M. Allen and John Bell Locke, executors, or to Amos G. Hull, Edwin G. Davis and William H. Taggard, the proctors and counsel of said executors, that sum being fixed as the amount that the said executors may spend and use from the estate of said John Hancock, deceased, to prosecute suits mentioned in the petition as necessity may require."

*Man & Parsons, Andrew Fallon,* and *Walter H. Shupe,* for the appellants.

*Amos G. Hull, Edwin G. Davis,* and *William H. Taggard,* for the respondents.

GILBERT, J.:

We have not been able to find any precedent for the order appealed from, and we are clearly of the opinion that it is void for lack of power in the court to make it. This court certainly had no power to make an allowance by way of costs of the proceedings in the Surrogate's Court. After the appeal this court acquired jurisdiction to make an extra allowance of costs only after judgment. Assuming that it was the duty of the executors to resist the appeal from the surrogate's decree, they were bound to defray the expenses incident to the proceedings, and to rely for reimbursement upon the settlement of their accounts as executors. Upon such settlement the beneficiaries under the will are entitled to be heard. If the executors cannot administer the trust devolved upon them, either because they have not means sufficient to defray the expenses thereof, or for any other cause, they should renounce the office. Neither the surrogate nor this court has power to make an appropriation from the property left by the deceased in anticipation of the expenses of administering the same. Such property belongs to the beneficiaries under his will, and they cannot be deprived of any part of it, except by due process of law. The disposition of such property belongs to the executors, under their official liability. For such disposition they are liable to account. The law has provided the manner of such

accounting.    It must be done *after*, and not *before*, they have expended moneys, and after the beneficiaries have been duly cited to attend upon the settlement of their accounts.    The effect of the order appealed from, if sustained, would be to reverse this order of proceeding, and to give legal sanction to items of expenditure by the executors without affording their *cestuis que trust* an opportunity to be heard respecting the same.    That cannot be lawfully done.

The order must be reversed, with $10 costs and disbursements, and restitution should be awarded.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Ordered accordingly.